This case is Nielson v. Department of Veterans Affairs. Ms. Robbins? Yes, Your Honor. May I please declare? The issue in this case is whether the proper interpretation of service trauma requires the Secretary to award Class II-A dental benefits to Mr. Nielson. The Veterans Court erred because it imported a violence requirement into the definition of service trauma. So how would you define trauma? Trauma or service trauma, Your Honor? Service trauma. Service trauma. We would submit that a service trauma is a wound or bodily injury that causes a wrenching and distressing experience, disruption in functioning that arises from the soldier's service. What about pulling teeth under anesthetic? Pulling teeth under anesthetic would not be a service trauma. It would lack the severity of the case here as well as the connection to the service. Ms. Robbins, I had a dental procedure about a month ago. I was in the chair for four hours. They finally had to shift to anesthetized surgery, and it was a very traumatic experience. I could go on, but just take my word for it. Yes, Your Honor. If I had been a member of the armed forces, would I have just gone through service trauma? I think it would depend, Your Honor, on whether your experience was due to the circumstances of your service. And that's what happened to Mr. Nielsen. Mr. Nielsen's dental. Was he at the Chosin Reservoir? Do you know your Korean War history? I recall that he was approximately four hours. The 10th Battalion got cut off there and were running for their lives, and I could understand if he was in some field hospital running for his life and they had no time but to just jerk it out and say, get out there and shoot your gun again. But he wasn't. He was behind the lines. He's an Air Force officer. That's a little different. In the record, it states that Mr. Nielsen was about 40 miles back, but that they were still the subject of raids and Chinese crossfire, is my understanding, Your Honor. But you catch the distinction I make. There is a distinction. I can see that perhaps even a dental procedure could become traumatic under the very extreme circumstances of the Chosin Reservoir, the 10th Battalion. But it's hard to see that. It's hard to distinguish his service from my dental procedure a couple miles away otherwise. Well, Your Honor, part of the problem was that the area in which Mr. Nielsen was serving, while it may not have been directly on the front line, was just a short ways back and was still experiencing supply shortages, which is the reason the VA dentist opined that there probably was no anesthesia, and that's why he experienced this. Are you distinguishing between a situation in which it's done with anesthetic and which it isn't? Is that the distinction? I would say that's part of it, but I don't think that's all of it here. If it were done with anesthetic, would it qualify? In this case, probably not, because it wouldn't have had the traumatic experience that Mr. Nielsen went through. It's very hard to separate out what happened here, but it's all due to the fact and the circumstances of the service in this particular area. If I understand correctly, there's a fact-finding by the Board, I think it's 56 and 57 of the appendix, that this was not an unusual or improper medical procedure, right? That is – let me just check. I'm not as familiar – as familiar with that. I mean, there's – I think that in the circumstances of the Caribbean War – that this was not an unusual procedure? That it was not an improper medical procedure. Improper medical procedure. And that's not Mr. Nielsen's claim that this was improper. I think what has been stated is that what he underwent was the result of supply shortages, and there has not been an allegation of malpractice. But I think part of Judge Dyke's point is that there's been a factual inquiry that it's hard for us to reconsider here on appeal. We are not – the facts of this case are not in dispute here, and we are not trying to put those facts before you. What we are trying to put before you is purely the interpretation of service trauma and whether or not that interpretation requires Mr. Nielsen, and the facts decided below entitles him to dental care. Well, it looks as though he didn't lose his teeth as the result of being operated on without anesthetic. He lost his teeth because he had a periodontal infection. And you seem to be saying that if it was done with anesthetic that he wouldn't have a claim. But the fact that it was done without anesthetic didn't result in the loss of his teeth. The loss of the teeth came about as a result of the infection, right? Yes, and the fact that he had an infection so severe that his health was threatened and that he was in intolerable pain was also the result of his service in the field, and that's what the VA's dentist found, in his opinion. And so it's really – Mr. Nielsen suffered an unfortunate consequence of events of his service. It was a tremendously severe infection, and presumably without these extractions, he would not have been able to continue to serve in this combat zone. The VA's dentist opined that his life was threatened and the amount of pain was intolerable. And that's the only reason that this would have happened. Had Mr. Nielsen not been in the service in this particular area, his teeth probably could have been saved. He wouldn't have undergone any of this. So can I just get clear, just in your exchange with Judge Dyke, are you saying that the trauma was the loss of teeth, or now it seems to me you're saying that the trauma, because you answered Judge Dyke that if he had had anesthesia it would have been okay, that the trauma was the pain that he incurred? I would suggest, Your Honor, that the trauma here is the infection that causes the loss of teeth and the loss of the teeth. There's more than one facet of it, Your Honor. But the lack of anesthesia, or the addition of anesthesia on its own, might change these facts. But that's not what we're trying to do here. The record shows that in instances where there was a physical event, like being hit by a parachute cord that knocked out the teeth, that those are covered by service trauma. Do you think those are too narrow? I do not think those are too narrow. I think the instances in which the Secretary has previously provided dental benefits don't justify the distinction that's made here, or the distinction that the Veterans Court attempted to make, which is to import the violence requirement. I think the case that you just highlighted is one in which there was no violence, and in that case that veteran got Class 2A dental benefits, but the Secretary has said here, Mr. Nielsen cannot receive those benefits. Do you ascribe any meaning to the word other preceding service trauma? And doesn't that suggest that it's sort of in the general neighborhood of what combat wounds are? Yes. I mean, we do have to look at service trauma in conjunction with the term combat wound. What I also think we need to do is look at other service trauma in terms of service connection. And because it needs to be something more than purely a service-connected disability. And so what we have suggested is that we've been focusing on the term service and how it modifies the trauma. Would you like to save your rebuttal time? Yes, Your Honor. Thank you, Ms. Robbins. Ms. Havasey. May it please the Court. Under the plain language of Section 1712A1C, service trauma cannot include the intended result of dental treatment. Well, suppose we have a situation in which somebody has a single cavity, right? And at the front line, they decide to pull all the veteran's teeth as a result of that. Clearly something which is malpractice isn't a call for treatment under the circumstances. Would that be a trauma or not? Something that would constitute malpractice could be a service trauma. It would depend, obviously, upon the facts of the case. But we would agree that if there was a finding of malpractice, that that could be service trauma. Because that wouldn't really be the intended result of dental treatment. It wouldn't be normal dental treatment, which is what we have here. The treatment was, as the Board found here, proper in those conditions for the periodontal disease that Mr. Nielsen had. If the treatment was found to somehow be improper, negligent, malpractice, that certainly could be another issue, again, dependent upon the facts. But here at page 57 of the Joint Appendix, the Board specifically found that this was not negligent. It was not malpractice. It was the treatment that was required in this case. So there could certainly be a distinction for malpractice, but not for a treatment that was the prescribed treatment for what Mr. Nielsen's condition. Would it have been different if he had been at the Chosin Reservoir? Well, that comes down to what the trauma that's being claimed. It was my reading of the briefs that the trauma was simply the extraction without anesthesia, specifically the without anesthesia part, as Mr. Nielsen's counseling. Of course, the whole point of that question is kind of to multiply the factors of difficulty. They're in field hospitals, on the run, fighting for their lives, trying to survive, doing triage sorts of work. Would those exacerbating circumstances have arisen to a combat wound or other service trauma? If the treatment itself was the same, no. The circumstances of the service don't really – I mean, they affect the treatment to the extent that there was no anesthesia available, but here we have either no anesthesia available under the circumstances under which Mr. Nielsen served or the circumstances that you described, it's the same treatment that we're talking about, which would be presumably under your circumstances or these circumstances the proper treatment under the circumstances. So the other circumstances of his service, where he was, what he was doing, that doesn't enter in the equation. Now we're asking about whether or not something is service trauma. We're looking at whether this extraction without anesthesia was service trauma. Well, the CAVC repeatedly cited definitions of the word trauma, and each of those definitions, as I recall, used the word violently produced. Yes. And it's hard for me to see. I mean, the other side brings up cases in which a person has been – a veteran has been compensated, including when someone chipped their tooth biting on a cherry pit. It's hard to see how that constitutes violently produced in our case. I think you need to look beyond what we would commonly understand violence to be and look at the dictionary definition of violence at the same time. The statute was first enacted in 1955. If you look at Black's Law Dictionary from that time, I believe it's a 1951 edition, the definition of violence in that dictionary was moving, acting, or characterized by physical force, especially by extreme and sudden or by unjust or improper force. So in that sense, even the cherry pit example could be violent in that it was an extreme, sudden, improper, improper in the sense of an unexpected force on the veteran's tooth. The same could be said about the other board cases that Mr. Nielsen has been citing where, you know, there was a parachute strap or falling off a ladder, that kind of thing. All of those were sudden, unexpected injuries. Here, it's not an unexpected injury. It's the treatment for the disease. It sounds to me as though you're agreeing that putting a violence requirement in there may be going a little far. Maybe it should be trauma. It's something that happens as a result of physical force, which is, in fact, a common dictionary definition. Right. We would agree more with the VA General Counsel opinion, which characterizes violence as an injury. Injury fits with the four definitions. It does fit with the more technical definitions. Trauma, you mean. Right. So you said violence. Sorry. I meant trauma being an injury, which does technically fit with the definitions of violence that existed at the time, maybe not how we would use violence. But certainly an injury would include all of the board decisions that we have here on this regulation, but would not include intended dental treatment, which is what Mr. Nielsen has here. Moreover, if you look at the statutory scheme, the dental benefits are more strictly limited than other medical treatment benefits. Under 1710, medical benefits are basically provided to any veteran for a service-connected disability or any veteran who has a service-connected disability rated 50% or more, so they would get treatment for their disability and for any other diseases that they would have. But under 1712, there are very strict limits, not just in A1C, which is the section that we're talking about here, but also the rest of the statute. If Mr. Nielsen had been able to show that the periodontal disease that he had was caused by tainted food or tainted water while he was stationed overseas, would that be sufficient to constitute trauma then? The disease itself might be sufficient to constitute trauma. There's no evidence in the record here that the disease was incurred in service. There's no evidence. He's never made a claim for service connection for periodontal disease. Well, it doesn't have to be incurred because it could be exacerbated while he's in service, correct? Also that, but again, he has not made a claim that it was aggravated by service or at least a formal claim. His claim here, as I understand it, is that the trauma was the extraction without anesthesia, but the statute does say service-connected dental condition. And here his dental condition is loss of teeth due to service trauma. I actually thought he did make the argument that the service aggravated his periodontal disease. He may not have proven that point, but I thought he did make that argument, no? He could have made the argument not as the main argument. He may have raised it, but certainly there has not been a factual finding by the board or the Veterans Court that there was any aggravation here or incurrence in service. And that certainly would be necessary for this court to go ahead and say that the disease was the trauma as opposed to the extractions as the trauma. The focus of the board in the Veterans Court was the extractions with anesthesia, without anesthesia. If the court were to find that the statute is ambiguous, then it should defer to VA's regulation, which does expand upon the definition of service trauma. I thought the regulation did not expand. I thought the regulation just parroted what the statute said without further definition or explanation. It includes an additional explanation, which says that the treatment given for the service-connected condition has to be reasonably necessary for the correction of the condition. Here it wouldn't make sense for the correction itself was the extractions. The extractions was the correction for the disease. So it wouldn't make sense to say that VA would provide treatment to correct a condition that was itself the correction. So in that sense, it is consistent with the statute. These reasons we respectfully request that the court defer. Thank you, Ms. Hevesy. Ms. Robbins, you have a little over five minutes remaining. Your Honors, during the Secretary's argument, it was raised that Mr. Nielsen had not made a claim for malpractice. But I'd like to highlight the fact that the VA dentist did make a finding and opine that this was not a case in which standard dental treatment was provided. Rather, the VA dentist said that this was an emergency situation in which the veteran's health necessitated the immediate extractions. Yeah, but you have a finding by the board that it wasn't malpractice. We're kind of stuck with that, aren't we? There's a difference between malpractice and standard dental care, Your Honor. The VA dentist opined that standard dental care would not be available in the field. That might mean that the practice didn't rise to the level of malpractice, but that doesn't mean that it was standard, traditional, normal dental care. And I don't think that's counter to what the board has found below. I'd like to also address the point regarding the intended effects of dental treatment. The Secretary returns to this point again and again and says that eating a piece of cherry pie, sitting and eating a piece of cherry pie at a base, that's a force that's applied to a teeth. And there's just simply no basis in the statute for that distinction. As we've suggested, a rising out of service would be a logical distinction, would be a logical line to draw. But in light of the mandate of Brown v. Gardner that the statute be interpreted in the veterans' favor when it's ambiguous, it doesn't make sense to draw that distinction here. Of course, Brown says that it's voluntary treatment. Yes, Your Honor. The footnote in Brown is where it seems that the general counsel's opinion originally came up with this idea of the intended effects of treatment. However, the statute in Brown was very different than what's in play here. In that statute, first of all, it was dealing with compensation and not with outpatient dental benefits. Secondly, it was providing compensation for the aggravation of a preexisting condition, and that was in a VA facility. Whereas here, we're dealing with the initial traumatic experience itself and whether that qualifies under the statute. And lastly, as I said, there's simply nothing in Section 1712A1C that suggests the intended benefits of treatment is a distinction that should be made. And there's no legislative history on that point either. If that's all, Your Honor, we… Thank you, Ms. Robbins.